UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAYNA STAGGS,

    Plaintiff,

       v.

SMITH & WESSON, *et al.*,

    Defendants.

Civil Action No. 21-2535 (JEB)

## MEMORANDUM OPINION

On October 1, 2019, Plaintiff Dayna Staggs, a security guard employed by American Security Programs, suffered severe leg injuries when his MP9 pistol accidentally discharged during a routine shift. Staggs has brought this *pro se* suit for the injuries he sustained against the gun manufacturer, Smith & Wesson; his employer at the time, ASP; and ASP's insurance carrier, Liberty Mutual Insurance. Defendants now separately move to dismiss the Complaint on independent grounds, including lack of personal jurisdiction, preemption, service failures, and pleading deficiencies. The Court agrees that ASP and Liberty Mutual prevail, but it will permit jurisdictional discovery as to Smith & Wesson.

**I.    Background**

Assuming the facts in the Complaint to be true, as it must at this stage, the Court begins with Staggs, who was a security guard working for ASP, a company that is insured by Liberty Mutual. See ECF Nos. 1 (Complaint), ¶ 5; 19 (Pl. Liberty Mutual Opp.) at 14. Plaintiff was stationed at the Government Accountability Office, located at 411 G Street, N.W., here in Washington. See Compl., ¶¶ 13, 18. On October 1, 2019, he arrived at work in the uniform of

another federal contractor, carrying a pistol issued by that firm. Id., ¶¶ 17, 18. His superior instructed him to change into the ASP uniform and duty gear instead, which he did around midnight in the GAO armory. Id., ¶ 18. ASP provided Staggs with a plastic holster and a Smith & Wesson MP9 pistol. Id., ¶¶ 5, 18, 19. When Plaintiff holstered the gun, it accidentally discharged and shot him in the leg, leading to long-term, debilitating physical injuries as well as severe emotional and mental distress. Id., ¶¶ 5, 6, 19, 32, 33.

Staggs filed his Complaint on September 29, 2021, against four Defendants: Smith & Wesson, ASP, Liberty Mutual, and an individual, Clem C. Trischler, who was voluntarily dismissed on October 18, 2021. See Compl. at 1; ECF No. 3 (Notice of Voluntary Dismissal). The Complaint alleges seven counts: strict product liability (Count I), negligence (Count II), breach of implied warranty of merchantability (Count III), breach of express warranty (Count IV), violation of the Magnuson-Moss Warranty Act (Count V), gross negligence (Count VI), and resulting legal damages (Count VII). See Compl., ¶¶ 55–96. Smith & Wesson is named as a Defendant in all seven counts. Id. ASP is named in Counts II and VII, and Liberty Mutual in Counts VI and VII. Id. All three Defendants separately move to dismiss Plaintiff's suit, asserting a number of infirmities. See ECF Nos. 6 (Smith & Wesson MTD); 10 (ASP MTD); 14 (Liberty Mutual MTD). The Court addresses all counts below save for VII, which is in actuality a prayer for relief and not a cause of action.

**II.     Legal Standard**

In evaluating a motion to dismiss, a court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A

court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A defendant may also move to dismiss a suit under Federal Rule of Civil Procedure 12(b)(2) if the court lacks personal jurisdiction over her. The plaintiff bears the burden of establishing personal jurisdiction, Erwin-Simpson v. AirAsia Berhad, 985 F.3d 883, 888 (D.C. Cir. 2021), and its requirements "must be met as to each defendant." Rush v. Savchuk, 444 U.S. 320, 332 (1980). In deciding whether the plaintiff has shown a factual basis for personal jurisdiction, courts resolve factual discrepancies in his favor. See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990). When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion." 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1351 (3d ed. 2021). The court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing. Id.

Complaints filed by *pro se* parties are to be liberally construed.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  In recognizing that Plaintiff is *pro se*, the Court will consider both facts that he has put forth in his Complaint and those in his Oppositions.  See Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015).

**III.   Analysis**

Each Defendant moves separately to dismiss, and for different reasons.  The Court thus addresses each Motion in turn.

    A.   American Security Programs

ASP contends that the claims against it are preempted by D.C.'s workers'-compensation statute.  The Workers' Compensation Act, D.C. Code § 32-1503(a)(1), applies, in relevant part, to "injury . . . of an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury . . . while in the District of Columbia[.]"  It also preempts tort claims that fall within the Act's orbit.  See id., § 32-1504(a) (establishing that "[t]he liability of an employer [under the WCA] shall be exclusive and in place of all liability of such employer to the employee").  Other courts in this District have held that "the law in this jurisdiction is clear that the WCA is the exclusive remedy for work-related injuries, with the result that common law tort claims arising from such injuries . . . are barred in civil actions." Lockhart v. Coastal Int'l Sec., Inc., 905 F. Supp. 2d 105, 117 (D.D.C. 2012); see also, e.g., Vanzant v. Washington Metro. Area Transit Auth., 557 F. Supp. 2d 113, 118 (D.D.C. 2008) (granting summary judgment for defendants because WCA was exclusive remedy for plaintiff's injury); Tatum v. Hyatt Corp., 918 F. Supp. 5, 8 (D.D.C. 1994) (same); Doe v. United States, 797 F. Supp. 2d 78, 82–84 (D.D.C. 2011) (granting defendant's motion to dismiss on same grounds).

4

This conclusion is undergirded by the policy and efficiency goals of workers'-compensation law in general.  In the words of Chief Judge Beryl Howell, "The exclusivity of remedy to employees is a fundamental part of the bargain reflected in workers' compensation laws, which necessarily entail a *quid pro quo* from both employers and employees."  Lockhart, 905 F. Supp. 2d at 116.  So long as "[t]he WCA's application does not present a substantial question warranting a stay to enable an administrative agency to determine coverage in the first instance," judgment for defendants is appropriate in cases of WCA-barred tort claims.  See Vanzant, 557 F. Supp. 2d at 118.  In sum, if Staggs's claim is covered by the WCA, he cannot proceed against ASP.

Such is clearly the case here.  The WCA covers "accidental injury or death arising out of and in the course of employment," D.C. Code § 32-1501(12), as well as "claims for emotional distress or mental anguish where the underlying cause or tort is covered by the WCA."  Vanzant, 557 F. Supp. 2d at 117.  Under § 32-1501(12), "arising out of" and "in the course of" are treated as two separate prongs that jointly establish a workers'-compensation claim, but "frequently proof of one will incidentally tend to establish the other."  Kolson v. D.C. Dep't of Emp. Servs., 699 A.2d 357, 360 (D.C. 1997) (citation omitted).

The "arising out of" requirement "refer[s] to the origin or cause of the injury."  Id. (quoting Southern Motor Lines Co. v. Alvis, 104 S.E.2d 735, 737 (Va. 1958)).  There are three categories of risk here: (1) "risks distinctly associated with the employment"; (2) "risks personal to the claimant"; and (3) "'neutral' risks — *i.e.*, risks having no particular employment or personal character."  Bentt v. D.C. Dep't of Emp. Servs., 979 A.2d 1226, 1232 (D.C. 2009) (quoting Georgetown Univ. v. D.C. Dep't of Emp. Servs., 971 A.2d 909, 920 n.10 (D.C. 2009)).  The first category (employment-associated risks) is universally compensable under the WCA.

5

Id. The accidental discharge of Staggs's duty-issued gun, while on premises and during work hours, plainly falls within such category, as it is a risk distinctly associated with his employment as an ASP security guard, making it automatically compensable under the WCA. See Compl., ¶¶ 5, 18, 19. Even if the discharge were to be characterized as a neutral risk, the injury would not have happened but for the fact that obligations of Staggs's employment — namely, holstering the MP9 pistol provided to him for his patrol while changing gear at the request of his supervisor — placed him in the position where the gun discharged. Id. The "arising out of" prong is thus satisfied.

Second, the "in the course of" requirement focuses on "the time, place, and circumstances under which the injury occurred." Niles v. D.C. Dep't of Emp. Servs., 217 A.3d 1098, 1103 (D.C. 2019). "An injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while the employee is reasonably fulfilling duties of [her] employment or doing something reasonably incidental thereto." Id. (cleaned up). Staggs was actively employed by ASP and at work when this incident occurred. See Compl., ¶¶ 5, 16, 17. More specifically, he was in the GAO armory, part of his work premises, changing into his new ASP uniform at the behest of his supervisor, demonstrating that he was somewhere he could have reasonably been expected to be and that he was fulfilling duties of his employment. See id., ¶¶ 18, 19. The second prong is thus also covered.

As Staggs's injury is an "accidental injury . . . arising out of and in the course of employment" under the WCA, his negligence claim against ASP falls within the scope of the WCA and is preempted. See, e.g., Doe, 797 F. Supp. 2d at 81–84 (granting defendant's motion to dismiss on preemption grounds where plaintiff employee was likely exposed to mad-cow

6

disease in negligently run experiment); Lockhart, 905 F. Supp. 2d at 108, 119–20 (granting defendant's motion to dismiss on, *inter alia*, preemption grounds where supervisor repeatedly slapped pregnant plaintiff employee in effort to revive her after she had passed out).

B. Liberty Mutual Insurance

The next Defendant, Liberty Mutual, argues that dismissal is warranted because it has not been properly served and because the sole count alleged against it is facially insufficient.

1. *Service of Process*

"[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant," Candido v. District of Columbia, 242 F.R.D. 151, 160 (D.D.C. 2007); as a result, "[f]ailure to effect service is grounds for dismissal." Johnson-Richardson v. University of Phoenix, 334 F.R.D. 349, 352 (D.D.C. 2020). Defendant Liberty Mutual is likely correct in its argument that Plaintiff has failed to effect proper service under Federal Rule of Civil Procedure 4(c)(2), as Staggs personally mailed the summons on September 29, 2021. See ECF No. 2 (Pl. Proof of Service) at 9; see also Liberty Mutual MTD at 3–5; Johnson-Richardson, 334 F.R.D. at 352 ("Rule 4(c)(2)'s restrictions — that is, that the 'person' effecting service be at least 18 years old and not a party to the case — extend to service made under Rule 4(e)(1), even if the relevant state law allows parties to effect service by personally sending the summons and complaint by certified mail."). The Court, however, need not decide this procedural question because it agrees with Liberty Mutual that Plaintiff has failed to state a claim upon which relief can be granted.

2. *Failure to State a Claim*

Plaintiff's sole substantive count against Liberty Mutual is for gross negligence (Count VI). See Compl., ¶¶ 90–92. As opposed to simple negligence, gross negligence must be "such

negligence as would 'shock fair-minded men,' or 'negligence of such magnitude as to be gross in character.'" Shea v. Fridley, 123 A.2d 358, 363 (D.C. 1956).  In seeking dismissal, Liberty Mutual contends that Count VI is duplicative of Count II, which asserts negligence against Smith & Wesson and ASP, and that gross negligence is not a stand-alone claim.  See Liberty Mutual MTD at 7–8.  Although this Court "defers to the general rule in the District of Columbia against recognizing degrees of negligence and [would] dismiss as duplicative plaintiff's claim for gross negligence . . . as a separate basis of liability," Hernandez v. District of Columbia, 845 F. Supp. 2d 112, 116 (D.D.C. 2012); see also Search v. Uber, 128 F. Supp. 3d 222, 237–38 (D.D.C. 2015), Defendant misconstrues those cases, as they involved claims of negligence and gross negligence against the same defendant.  As Liberty Mutual is not a defendant to the Count II negligence claim, its duplication argument founders.

The Court, however, does agree with Defendant that gross negligence is not a stand-alone cause of action in the District of Columbia.  See Bradley v. National Collegiate Athletic Association, 249 F. Supp. 3d 149, 169 (D.D.C. 2017); Search, 128 F. Supp. 3d at 237; see also Liberty Mutual MTD at 7.  "[U]nder [D.C.] law, courts have traditionally analyzed whether a defendant acted with gross negligence only in limited circumstances," which can generally be classified into two categories.  See Hernandez, 845 F. Supp. 2d at 116.  The first covers situations "where gross negligence is a specific element of a claim or defense." Id.; District of Columbia v. Walker, 689 A.2d 40, 44–45 (D.C. 1997).  The second involves instances in which equitable reasons such as public policy demand relief.  See, e.g., Hernandez, 845 F. Supp. 2d at 116; Carleton v. Winter, 901 A.2d 174, 181–82 (D.C. 2006) (holding that plaintiff could raise gross-negligence claim as matter of "public policy to discourage aggravated wrongs," even though exculpatory clause in contract limited defendant's negligence liability).  Neither of these

8

circumstances is present here. All of this is largely beside the point because even characterizing Count VI generously as a simple-negligence claim, there are no facts in any pleading that could substantiate it. Liberty Mutual owed no duty to Staggs, nor did it play any role in his injury.

Finally, Plaintiff's contention that there is "legal contractual liability" against Liberty Mutual for "coverage liability rights" is jumbled to say the least. See Pl. Liberty Mutual Opp. at 12. "It is a fundamental principle of contract law that, in order to sue for damages on a contract claim, a plaintiff must have either direct privity or third-party beneficiary status." Lexington Insurance Co. v. Paddock Swimming Pool Co., 532 F. Supp. 3d 1, 17 (D.D.C. 2021). Staggs does not allege that he entered into any contract with Liberty Mutual. In addition, a plaintiff seeking to enforce a contract as a third-party beneficiary under District of Columbia law must identify a contract that "directly and unequivocally intend[s] to benefit [that party], in order for [that party] to be considered an intended beneficiary." Sidibe v. Traveler's Ins. Co., 468 F. Supp. 2d 97, 100–01 (D.D.C. 2006). "To be intended, a beneficiary need not be named in the contract, as long as he or she is ascertainable from the contract and the circumstances of the contract." Hossain v. JMU Props., 147 A.3d 816, 820 (D.C. 2016). Staggs here cites no contract or insurance policy, let alone alleges facts that he is an "intended" third-party beneficiary. Id. Conclusory allegations about Liberty Mutual's contractual liability are not sufficient to survive a motion to dismiss.

C. Smith & Wesson

Last up is Smith & Wesson, which maintains that the Court has no personal jurisdiction over it. There are two ways for a D.C. court to obtain personal jurisdiction over a non-resident defendant: general and specific jurisdiction. Both methods must be authorized by statute and be consistent with the Constitution's Due Process Clause. See Erwin-Simpson, 985 F.3d at 888–89;

9

Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002) ("In a diversity case, the court's personal jurisdiction over nonresident defendants depends upon state law[,] . . . the application of which is subject to the constraints of constitutional due process.").

1. *General Jurisdiction*

As to the first, "a D.C. court can exercise [general] jurisdiction 'over a person domiciled in, organized under the laws of, or maintaining his[, her,] or its principal place of business in, the District of Columbia.'" Erwin-Simpson, 985 F.3d at 889 (quoting D.C. Code § 13-422) (alterations in original); see also id. (noting that §13-334(a) of D.C. Code, though written as a service-of-process statute, has also been "interpreted to confer personal jurisdiction"). If a court has general jurisdiction, it may adjudicate claims unrelated to the defendant's connection with the forum state. See Livnat v. Palestinian Authority, 851 F.3d 45, 56 (D.C. Cir. 2017) (quoting Walden v. Fiore, 571 U.S. 277, 383 n.6 (2014)).

Plaintiff's allegation that Defendant "does business systematically and continuously" with the District, see Compl., ¶ 15, however, is insufficient to establish general jurisdiction. First and foremost, neither statute authorizing such jurisdiction is satisfied in this case. Staggs does not identify Smith & Wesson as being "domiciled in, organized under the laws of, or maintaining [its] principal place of business[] in the District." D.C. Code § 13-422. In fact, he affirmatively identifies the company as being a citizen of and operating its principal place of business in various other states. See Compl., ¶¶ 12, 15. Section 13-334(a), moreover, is triggered only when the defendant is served in the District. See Erwin-Simpson, 985 F.3d at 889. That did not occur here. See ECF No. 2 (S&W Proof of Service) at 2.

General jurisdiction also fails in this case as a matter of due process. To satisfy the constitutional requirement, a court may only exercise general jurisdiction over a non-resident

10

defendant whose contacts with the forum are "so substantial and of such a nature to render [the defendant] at home in that State." Erwin-Simpson, 985 F.3d at 890 (quoting Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014)).  The "paradigm" cases in which exercising general jurisdiction over a corporate defendant is appropriate are instances in which the forum is the corporation's principal place of business or place of incorporation.  Id.  Neither circumstance applies here.

Although the Supreme Court has recognized that due process may also permit exercising general jurisdiction over a defendant who is "at home" in the forum state despite being incorporated and operating its principal place of business elsewhere, this is the "exceptional case."  Id. (quoting Daimler, 571 U.S. at 139 n.19).  To be "essentially at home," a defendant must be "comparable to a domestic enterprise in that State."  Id. (quoting Daimler, 571 U.S. at 133 n.11).  Plaintiff has offered no evidence that Defendant satisfies this high bar.  Exercising general jurisdiction over the company would thus be inconsistent with affording it due process.

2. *Specific Jurisdiction*

Even in cases where general jurisdiction is not appropriate, a court may exercise specific jurisdiction over a non-resident defendant to adjudicate only those claims that arise out of its contact with the forum state.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (noting that specific jurisdiction covers only those "issues deriving from, or connected with, the very controversy that establishes jurisdiction") (internal quotation marks and citation omitted).  In these instances, the court "first examine[s] whether jurisdiction is applicable under the . . . [state's] long-arm statute and then determine[s] whether a finding of

jurisdiction satisfies the constitutional requirements of due process." GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).

D.C.'s long-arm statute enumerates the kinds of contacts with the District that are sufficient to bring a non-resident defendant into a D.C. court, two of which are at issue here: "transacting any business in the District of Columbia" and "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia." D.C. Code § 13-423(a)(1), (4).

Under both prongs, exercising personal jurisdiction is only appropriate where doing so also comports with due process, which requires that a defendant have minimum contacts with the forum before being subject to its jurisdiction. See, e.g., Hardy v. N. Leasing Sys., Inc., 953 F. Supp. 2d 150, 156–57 (D.D.C. 2013); Schwartz v. CDI Japan, Ltd., 938 F. Supp. 1, 4 (D.D.C. 1996). In fact, for cases that fall within the "transacting business" prong, the issue is one of due process alone. See Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987) (holding that the "transacting business" clause is "coextensive . . . with the Constitution's due process limit"). The "tortious injury" prong also requires a "persistent course of conduct," which "serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." Id. at 763.

A plaintiff, however, may not satisfy the constitutional requirements of due process merely by pointing to sporadic contact between the defendant and the forum. Although physical presence in the forum is not necessary, the defendant must have somehow "purposeful[ly] avail[ed]" itself of "the benefits and protections of the forum's laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985) (internal quotation marks and citations omitted). This requirement may be satisfied through the defendant's "participation in the 'stream of

commerce,'" including by moving goods "through distributors to consumers" in the forum. Williams v. Romarm, SA, 756 F.3d 777, 784 (D.C. Cir. 2014) (quoting J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881 (2011)). "[A] 'single isolated sale,'" however, "has never been sufficient to establish minimum contacts between the manufacturer and the forum." Id. at 785 (quoting Nicastro, 564 U.S. at 888 (Breyer, J., concurring)).

Instead, the Due Process Clause requires that the defendant "target[] the District or its customers in some way." Id. The defendant may do so through "efforts directed toward the forum state, such as 'special state-related design, advertising, advice, [or] marketing.'" Id. (quoting Nicastro, 564 U.S. at 889 (Breyer, J., concurring)). A "'regular flow or regular course of sales' in the forum" may also help demonstrate targeting. Id. at 785 (quoting Nicastro, 564 U.S. at 889 (Breyer, J., concurring)). Finally, "[t]he plaintiff's claims . . . must arise out of or relate to the defendant's contacts with the forum." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) (internal quotation marks and citations omitted).

On the current record, Staggs has not yet established that exercising specific personal jurisdiction over Smith & Wesson would be appropriate. He alleges that the company conducts "business systematically and continuously" with parties operating throughout the District, see Compl., ¶ 15, and that it "purposefully avails" itself of the District's laws through its sales, as well as by directing "products and activities towards the forum state." Pl. Repl. at 9. Plaintiff has not, however, alleged any "specific facts" to support these assertions or to "plausibly demonstrate Defendant's 'minimum contacts' with the District." Fiorentine v. Sarton Puerto Rico, LLC, 486 F. Supp. 3d 377, 385–86 (D.D.C. 2020) (holding that court need not accept as true "conclusory assertion[s]" of jurisdiction unsupported by "specific facts"). This Court, therefore, is unable to conclude at this point that the company's contacts with the District are

sufficient for it to "reasonably anticipate being haled into court" and be fairly subject to its jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

### 3. Jurisdictional Discovery

A court may nevertheless provide a plaintiff with the opportunity to supplement her factual allegations via jurisdictional discovery. In fact, a court "has broad discretion in its resolution of [jurisdictional] discovery problems," and "[t]he standard for permitting jurisdictional discovery is quite liberal." App Dynamic ehf v. Vignisson, 87 F. Supp. 3d 322, 329 (D.D.C. 2015) (internal quotation marks and citations omitted). In general, jurisdictional discovery should be "granted freely" so long as the plaintiff demonstrates "a good faith belief that such discovery will enable [her] to show that the court has personal jurisdiction over the defendant." Id. (internal quotation marks and citation omitted); see also Carr, 814 F.2d at 764 (plaintiff is "entitled to a fair opportunity to inquire into [defendant's] affiliations with the District").

Smith & Wesson argues that Staggs has not met this standard because he fails to make a "detailed showing of what discovery he wishes to conduct," as well as the likely results of such discovery. See Pl. Repl. at 3-4. The Court disagrees. Plaintiff's allegations, construed liberally, see Haines, 404 U.S. at 520, demonstrate a good-faith belief that discovery will enable him to show that Defendant targets the District for sales. Not only has Staggs alleged that the company "manufactures firearms for commercial markets [in the District]" and regularly does business with government contractors operating here, see Compl., ¶ 15, but he also points to a sales representative employed by Defendant and responsible for sales within the District. See Pl. Repl. at 6. Plaintiff's repeated references to sales practices focused on the D.C. market amount to more than just "generalized predictions" that Defendant has customers here. See Atlantigas

14

Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 53 (D.D.C. 2003). Staggs's allegations indicate, instead, a good-faith belief that Defendant targets the District in some way. Although these allegations, standing alone, are insufficient to establish personal jurisdiction, they suggest at least "some facts about what additional discovery could produce." Shaheen v. Smith, 994 F. Supp. 2d 77, 89 (D.D.C. 2013).

Taken together, Plaintiff's allegations indicate a reasonable belief that he will uncover, through jurisdictional discovery, the extent to which Defendant targets the District for sales using efforts such as "special state-related . . . advertising, advice, [or] marketing," Williams, 756 F.3d at 785 (quoting Nicastro, 564 U.S. at 889 (Breyer, J., concurring)), be it through the volume of contracts with D.C.-based contractors or D.C.-specific sales practices by Defendant's staff. See also Rundquist v. Vapiano SE, 798 F. Supp. 2d 102, 120–21 (D.D.C. 2011) (ordering discovery when evidence of defendant's "licensing, franchising, or similar agreements" with other defendants could establish personal jurisdiction). Contrary to the company's assertion, Staggs need not establish with absolute clarity what facts he expects discovery to unearth, but rather that discovery "can supplement [his] jurisdictional allegations," as well as some indication of "how . . . discovery would help [him] discover anything new." Vignisson, 87 F. Supp. 3d at 329 (internal quotation marks and citations omitted) (emphasis added). Plaintiff's reference to "business plans," "budgets," "advertising," "marketing," and "sales" all indicate types of evidence plausibly related to Defendant's efforts to "target[] the District or its customers in some way." Williams, 756 F.3d at 785. It is not "mere conjecture or speculation" to imagine how such evidence may reveal that Smith & Wesson directs its "products and activities towards the forum state." Pl. Repl. at 9. With the benefit of such discovery, the Court will be better able to determine whether Defendant's contacts with the District are sufficient to establish personal

15

jurisdiction.  See, e.g., Pinkett v. Dr. Leonard's Healthcare Corp., No. 18-1656, 2018 WL 5464793, at *5–6 (D.D.C. Oct. 29, 2018) (ordering jurisdictional discovery in products-liability case).

**IV.     Conclusion**

The Court, accordingly, will grant ASP and Liberty Mutual's Motions to Dismiss.  It will hold Smith & Wesson's in abeyance pending jurisdictional discovery.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 14, 2022