**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**DAYNA STAGGS,**

**Plaintiff,**

v.                                                    **Civil Action No. 21-2535 (JEB)**

**SMITH & WESSON,**

**Defendant.**

---

**<u>MEMORANDUM OPINION</u>**

On October 1, 2019, Plaintiff Dayna Staggs, a security guard employed by American Security Programs, suffered severe leg injuries when his M&P 9mm pistol accidentally discharged during a routine shift.  Staggs then brought this *pro se* suit for the injuries he sustained against the gun manufacturer, Smith & Wesson; his employer at the time, ASP; and ASP's insurance carrier, Liberty Mutual Insurance.  Defendants separately moved to dismiss the Complaint on independent grounds, including lack of personal jurisdiction, preemption, service failures, and pleading deficiencies.  The Court dismissed the claims against ASP and Liberty Mutual and ordered jurisdictional discovery as to Smith & Wesson.  With that discovery now complete, Smith & Wesson renews its Motion to Dismiss for lack of personal jurisdiction, which the Court will grant.

I.      **Background**

A.  <u>Factual Background</u>

According to the Complaint, which the Court must credit at this stage, Staggs was a security guard working for ASP.  <u>See</u> ECF Nos. 1 (Compl.), ¶ 5; 19 (Liberty Mutual Opp.) at 14.

He was stationed at the Government Accountability Office, located at 411 G Street, N.W., here in Washington.  See Compl., ¶¶ 13, 18.  On October 1, 2019, he arrived at the GAO in the uniform of Centerra Group, a different federal contractor for whom he worked, carrying a Centerra-issued firearm.  Id., ¶¶ 17–18.  His supervisor instructed him to change into the ASP uniform and duty gear, which he did around midnight in the GAO armory.  Id., ¶ 18.  ASP provided Staggs with a plastic holster and a Smith & Wesson M&P 9mm pistol.  Id., ¶¶ 5, 18–19.  While attempting to holster the gun, it accidentally discharged and shot Staggs in the leg, leading to long-term, debilitating physical injuries, as well as severe emotional and mental distress.  Id., ¶¶ 5–6, 19, 32–33.  The parties agree that this injury occurred while Staggs was working for ASP.  Id., ¶ 5; ECF No. 10 (ASP MTD) at 2.

Plaintiff filed his Complaint on September 29, 2021, against Smith & Wesson, ASP, Liberty Mutual, and an individual, Clem C. Trischler, who was voluntarily dismissed on October 18, 2021.  See Compl. at 1; ECF No. 3 (Notice of Voluntary Dismissal).  The Complaint alleges seven counts: strict product liability (Count I), negligence (Count II), breach of implied warranty of merchantability (Count III), breach of express warranty (Count IV), violation of the Magnuson-Moss Warranty Act (Count V), gross negligence (Count VI), and resulting legal damages (Count VII).  See Compl., ¶¶ 55–96.  Smith & Wesson is named as a Defendant in all seven counts.  Id.

B.  Procedural History

On February 14, 2022, this Court granted ASP's and Liberty Mutual's motions to dismiss on the basis of preemption under the D.C. Workers Compensation Act and failure to state a claim, respectively.  See Staggs v. Smith & Wesson, 2022 WL 444110 (D.D.C. Feb. 14, 2022).  Smith & Wesson did not get off so easily.  In response to its motion to dismiss, the Court first

found no basis to assert general personal jurisdiction over the company.  Id. at *5–6.  But it also held that, although the Complaint did not yet plead sufficient facts to allow the Court to assert specific personal jurisdiction over Smith & Wesson, Plaintiff had made a sufficient showing to obtain jurisdictional discovery.  Id. at *8.  The Court observed that in order to establish specific personal jurisdiction, Staggs would have to elicit in discovery particular facts showing that Smith & Wesson targeted the District for sales.  Id. at *7.

After the parties filed interim status reports regarding discovery, Defendant filed a Supplemental Memorandum in support of its Motion to Dismiss on April 20, 2022.  See ECF No. 31 (Suppl. Memo.).  Staggs then filed a response.  See ECF No. 32 (Pl. Response).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over it.  The plaintiff bears the burden of establishing personal jurisdiction.  See FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008).  In deciding this question, a court resolves factual discrepancies in favor of the plaintiff. See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990).  When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion."  5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004).  The court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing.  Id.

Where, as here, the parties have conducted jurisdictional discovery, the plaintiff "must prove that personal jurisdiction exists by a preponderance of the evidence."  Shapiro, Lifschitz & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 20 (D.D.C. 2000).  The court "can consider materials outside of the pleadings, including declarations and evidence produced during the course of

jurisdictional discovery." Alkanani v. Aegis Def. Servs., LLC, 976 F. Supp. 2d 13, 22 (D.D.C.

2014) (citing Frost v. Catholic Univ. of Am., 960 F. Supp. 2d 226, 231 (D.D.C. 2013)).  The

court still must resolve any factual discrepancies in favor of the plaintiff.  Id. at 22 (citing Am.

Action Network, Inc. v. Cater Am., LLC, 983 F. Supp. 2d 112, 118 (D.D.C. 2013)).

## III.   Analysis

     In its previous Opinion, the Court set out the parameters for specific jurisdiction in this

case.  Seeing no need to reinvent the wheel, it quotes that explanation wholesale:

> Even in cases where general jurisdiction is not appropriate, a court
> may exercise specific jurisdiction over a non-resident defendant to
> adjudicate only those claims that arise out of its contact with the
> forum state.  See Goodyear Dunlop Tires Operations, S.A. v. Brown,
> 564 U.S. 915, 919 (2011) (noting that specific jurisdiction covers
> only those "issues deriving from, or connected with, the very
> controversy that establishes jurisdiction") (internal quotation marks
> and citation omitted).  In these instances, the court "first examine[s]
> whether jurisdiction is applicable under the . . . [state's] long-arm
> statute and then determine[s] whether a finding of jurisdiction
> satisfies the constitutional requirements of due process."  GTE New
> Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C.
> Cir. 2000).
>
> D.C.'s long-arm statute enumerates the kinds of contacts with the
> District that are sufficient to bring a non-resident defendant into a
> D.C. court, two of which are at issue here: "transacting any business
> in the District of Columbia" and "causing tortious injury in the
> District of Columbia by an act or omission outside the District of
> Columbia."  D.C. Code § 13-423(a)(1), (4).
>
> Under both prongs, exercising personal jurisdiction is only
> appropriate where doing so also comports with due process, which
> requires that a defendant have minimum contacts with the forum
> before being subject to its jurisdiction.  See, e.g., Hardy v. N.
> Leasing Sys., Inc., 953 F. Supp. 2d 150, 156–57 (D.D.C. 2013);
> Schwartz v. CDI Japan, Ltd., 938 F. Supp. 1, 4 (D.D.C. 1996).  In
> fact, for cases that fall within the "transacting business" prong, the

issue is one of due process alone.  See Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987) (holding that the "transacting business" clause is "coextensive . . . with the Constitution's due process limit").  The "tortious injury" prong also requires a "persistent course of conduct," which "serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum."  Id. at 763.

A plaintiff, however, may not satisfy the constitutional requirements of due process merely by pointing to sporadic contact between the defendant and the forum.  Although physical presence in the forum is not necessary, the defendant must have somehow "purposeful[ly] avail[ed]" itself of "the benefits and protections of the forum's laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985) (internal quotation marks and citations omitted).   This requirement may be satisfied through the defendant's "participation in the 'stream of commerce,'" including by moving goods "through distributors to consumers" in the forum.  Williams v. Romarm, SA, 756 F.3d 777, 784 (D.C. Cir. 2014) (quoting J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881 (2011)).  "[A] 'single isolated sale,'" however, "has never been sufficient to establish minimum contacts between the manufacturer and the forum."   Id. at 785 (quoting Nicastro, 564 U.S. at 888 (Breyer, J., concurring)).

Instead, the Due Process Clause requires that the defendant "target[] the District or its customers in some way."  Id.  The defendant may do so through "efforts directed toward the forum state, such as 'special state-related design, advertising, advice, [or] marketing.'" Id. (quoting Nicastro, 564 U.S. at 889 (Breyer, J., concurring)).  A "'regular flow or regular course of sales' in the forum" may also help demonstrate targeting.  Id. at 785 (quoting Nicastro, 564 U.S. at 889 (Breyer, J., concurring)).   Finally, "[t]he plaintiff 's claims . . . must arise out of or relate to the defendant's contacts with the forum."  Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) (internal quotation marks and citations omitted).

Staggs, 2022 WL 444110, at *6–7.

In its prior Opinion, the Court found that Staggs's allegations — while insufficient to establish personal jurisdiction by themselves — indicated "at least 'some facts about what additional discovery could produce.'"  Id. at *7 (quoting Shaheen v. Smith, 994 F. Supp. 2d 77, 89 (D.D.C. 2013)).  For example, Staggs "demonstrate[d] a good-faith belief that discovery will enable him to show that Defendant targets the District for sales."  Id.  Now that jurisdictional discovery is complete, the Court finds that Plaintiff has not provided sufficient evidence that his claims arise out of or relate to Defendant's presence in the forum such that constitutional due process is satisfied.

To begin, Staggs's injury does not arise out of Smith & Wesson's presence here because the subject firearm was not sold in the District.  See ECF No. 29 (Def. Status Rpt.), ¶ 7.  In fact, Defendant sold the firearm to the Reston, Virginia-based ASP and shipped it to Dulles, Virginia. Id.  The only question, therefore, is whether Plaintiff's claims "relate to" Defendant's contacts with the District.

In Ford Motor Co., the Supreme Court recently clarified that there does not need to be a causal relationship between the plaintiff's claims and the defendant's contacts with the forum for the former to "relate to" a defendant's conduct in that forum.  See 141 S. Ct. at 1026.  Rather, "specific jurisdiction attaches . . . when a company like [Defendant] serves a market for a product in the forum State and the product malfunctions there."  Id. at 1027.  There is no doubt that the gun misfired here, but Plaintiff's evidence does not demonstrate the requisite level of targeting or market cultivation for its guns in the District to enable the Court to exercise jurisdiction.  Id. at 1025.

Staggs provided the Court with a Status Report and nine exhibits.  Much of the information contained there, however, does not relate to the relationship between Defendant and

the District.  See generally ECF No. 30 (Pl. Status Rpt.); see also ECF No. 30-1 (Pl. Exhs.) at

ECF pp. 3–5, 7–24, 28–34.  Several exhibits nonetheless warrant discussion, though none

demonstrates the requisite contacts between Defendant and the District.

First, Plaintiff included an image of an online search for Smith & Wesson firearm

accessories sold at a "Washington D.C. area" Walmart.  See Pl. Exhs. at ECF p. 2.  Firearms are

not the same as accessories, however.  Nor does the D.C. area necessarily mean that the Walmart

is located within the District itself.  In addition, Staggs has not shown the types of contacts

present in Ford Motor Co.  In that case, the Court had evidence that Ford had "engage[d] in

wide-ranging promotional activities, including television, print, online, and direct-mail

advertisements."  141 S. Ct. at 1022.  Ford had also marketed and advertised the exact model of

car that had allegedly malfunctioned in the forum where the plaintiffs sought to establish

jurisdiction.  Id. at 1024.  Here, there is no evidence in the record of Defendant's participating in

"wide-ranging promotional" activity in the District.  Nor is there any indication that it sold M&P

9mm pistols in the city.  The firearm accessories sold in a D.C.-area Walmart, therefore, do not

provide sufficient evidence to enable the Court to exercise specific jurisdiction.  Id. at 1025.

Second, Staggs attempts to use Defendant's online presence in D.C. to establish

jurisdiction.  See Pl. Exhs. at ECF pp. 6, 25–27.  He provided the Court with screenshots of

online webpages that, according to Plaintiff, demonstrate that Smith & Wesson markets its

products in the District.  See id.  The first of these screenshots, Exhibit 5, provides a general

description of Smith & Wesson and links to its social-media pages.  Id. at ECF p. 6.  The second

image, Exhibit 7, shows that Defendant has a sales representative who deals with "law

enforcement, sales, and administration" in a region that includes the District of Columbia.  Id. at

ECF pp. 26.

Personal jurisdiction "cannot be based solely on the ability of District residents to access the defendants' websites." GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000). Websites must "meet a certain level of interactivity [with users in the District of Columbia]" to be deemed sufficient contacts with the city. Shaheen, 994 F. Supp. 2d at 84 (quoting Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell, 578 F. Supp. 2d 164, 171 (D.D.C. 2008)) (alteration in original). None of the websites represented in Exhibit 5 or Exhibit 7 is interactive, and there is "no question that anyone, anywhere could access [these] home page[s]." GTE New Media Servs. Inc., 199 F.3d at 1348 (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997)) (internal quotation marks omitted). In addition, although Smith & Wesson has a designated sales representative for each region, see Pl. Exhs. at ECF pp. 26–27, given that the company does not sell firearms into D.C., the presence of a mid-Atlantic agent does not suggest a contact related to Plaintiff's claim. See Def. Status Rpt., ¶ 7. As a result, neither of the screenshots establishes that Defendant purposefully targeted D.C. residents.

Finally, Staggs points to Defendant's national net sales and gross profits as evidence of its business transactions in the District. See Pl. Status Rpt., ¶ 7. But that information does not show how many sales or what type occurred here. Id. The Defendant's declaration, by contrast, stated that "[i]n the last three (3) years (2019-2021), Smith & Wesson did not sell or ship any firearms" to any of the authorized firearm licensees in the District. See Def. Status Rpt., ¶ 7. Based on the evidence provided, there is no indication that "there is a strong 'relationship among the defendant, the forum, and the litigation.'" Ford Motor Co., 141 S. Ct. at 1028 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). The Court, therefore, cannot exercise specific jurisdiction over Defendant.

**IV.     Conclusion**

As the Court lacks personal jurisdiction over Smith & Wesson, its Motion to Dismiss will be granted.  A separate Order consistent with this Memorandum Opinion will issue this date.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 13, 2022